# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **LOUIS Z. MOSBY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case number 4:08cv1478 TCM** |
| | ) | |
| **TERRY RUSSELL and** | ) | |
| **CHRIS KOSTER,[1]** | ) | |
| | ) | |
| **Respondents.** | ) | |

## MEMORANDUM AND ORDER

Louis Z. Mosby, who is a Missouri prisoner, petitions the United States District Court for the Eastern District of Missouri for federal habeas corpus relief from a conviction following a guilty plea. <u>See</u> 28 U.S.C. § 2254. Finding that Petitioner's three grounds are without merit, the petition will be denied without further proceedings.[2]

---

[1] The record shows that Petitioner is incarcerated at the Eastern Reception, Diagnostic and Correctional Center (ERDCC) where Terry Russell is now the Warden. <u>See</u> http://doc.mo.gov./division/dai/warden.php (last visited Sept. 20, 2011). The Court will substitute Terry Russell for the originally named Respondent, Steve Larkins, who was the Warden at the ERDCC when this action was filed.

Additionally, when Petitioner filed this federal habeas action, he was serving the first of two consecutive terms of imprisonment resulting from the judgment he is now challenging. Because Petitioner is challenging a sentence he is going to serve in the future, the Attorney General of Missouri should be named as a party respondent in this habeas action. See Rule 2(b), Rules Governing Section 2254 in the United States District Courts. Accordingly, the Court will add as a Respondent Chris Koster, the Attorney General for the State of Missouri.

[2] Petitioner attached his affidavit to his Petition (<u>see</u> Doc. 1-2) and attached that same affidavit, as well as an affidavit of his mother, Dorothy Mae Mosby-Howard, to his reply (<u>see</u> Doc. 12 at 19-22). These affidavits address a statement in the plea transcript that was reported as made by Petitioner's mother but was attributed by the state courts to Petitioner. <u>See</u>, <u>e.g.</u>, Missouri Court of Appeals decision, Resp'ts Ex. E, at 6 n.3. The available record does not indicate that these affidavits, which are dated in 2008, were part of the state court proceedings,

**Background**

Petitioner was charged with assault in the first degree, in violation of Mo. Rev. Stat. § 565.050, for attempting to kill or cause serious physical injury to David Holmes (Victim) by shooting him and causing him serious physical injury (Count I); robbery in the first degree, in violation of Mo. Rev. Stat. § 569.020, for forcibly stealing lawful currency owned by Victim while armed with a deadly weapon (Count II), and armed criminal action ("ACA") in violation of Mo. Rev. Stat. § 571.015, which was related to the first-degree assault offense (Count III).  (Information, Legal File, Resp'ts Ex. D, at 5-6 [Doc. 11] (all of Respondents' exhibits are part of Document 11).)

Petitioner entered a guilty plea to the charges in Counts I and III and, upon that plea, the first-degree robbery charge was dismissed.  (Plea Tr., Legal File, Resp'ts Ex. D, at 14-31.) The plea court subsequently sentenced Petitioner to terms of imprisonment of life for the first-degree assault and ten years for the ACA, with those sentences running consecutively.  (Sentence and Judgment, Resp'ts Ex. D at 49-50; Sentencing Tr., Resp'ts Ex. D, at 44, 46.)

Petitioner did not appeal, but did timely seek post-conviction relief by filing a motion under Mo. S. Ct. Rule 24.035.  (Pet'r Post-Conviction Mot., Legal File, Resp'ts Ex. D, at 53-72).  Through counsel, Petitioner filed an amended post-conviction motion. (Pet'r Am. Post-conviction Mot., Legal File, Resp'ts Ex. D, at 73-82.)  Petitioner

---

which concluded in 2007.  Because it is not clear that these affidavits were presented to the state courts  or were otherwise part of the state court record, this Court will not consider them when resolving the issues presented in this federal habeas proceeding.

presented two claims in that motion, that Petitioner's rights to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments were violated because (1) the plea court failed to comply with Missouri S. Ct. Rule 24.02(e), which requires the court to find a sufficient factual basis for the plea, in that there were insufficient facts that Petitioner "attempted to kill or cause serious physical injury" to Victim; and (2) the sentencing court mistakenly believed it was required to run the ACA sentence consecutive to the sentence imposed for the first-degree assault. (Id. at 74.)

Without an evidentiary hearing, the motion court entered findings of fact and conclusions of law denying Petitioner's post-conviction motion ("Judgment"). (Judgment, Legal File, Resp'ts Ex. D, at 82-90.)

Petitioner appealed, raising two points. (Pet'r Br., Resp'ts Ex. A.) In his first point, Petitioner alleged his guilty plea to first-degree assault was involuntary and violated his right to due process under the Fourteenth Amendment because the record contained an insufficient factual basis for that plea. (Id. at 9, 13.) For his second point, Petitioner argued the sentencing court violated his right to due process under the Fourteenth Amendment by acting under the mistaken belief that it was required to run the sentences consecutively. (Id. at 11, 23.)

The Missouri Court of Appeals for the Southern District affirmed the denial of Petitioner's post-conviction motion. (Opinion, dated October 31, 2007, Resp'ts Ex. E.) The state appellate court described the factual and procedural background as follows:

> In September 2001, [Petitioner] was charged in a three-count information with committing assault in the first degree (Count I), robbery

in the first degree (Count II) and ACA (Count III).  See §§ 565.050, 569.020, 571.015.[3]  All three charges arose out of an armed robbery of a locksmith store during which the owner, [Victim], was shot with a handgun.  Insofar as relevant here, Count I alleged that "on or about March 13, 2001 . . . [Petitioner] attempted to kill or cause serious physical injury to [Victim] by shooting him, and in the course thereof, inflicted serious physical injury to [Victim] . . . ."

On April 9, 2002, the State and [Petitioner] entered into a plea agreement.  He agreed to enter an open plea of guilty to the charges of first-degree assault and ACA.  In return, the State agreed to dismiss the first-degree robbery charge. [Petitioner] and his plea attorney each executed a guilty plea petition.  It stated, in pertinent part, as follows:

> 5.  I know that the Court must be satisfied that there is a factual basis for a PLEA OF GUILTY before my plea can be accepted.  I represent to the Court that I did the following acts in connection with the charge made against me: <u>Caused serious physical injury to [Victim] by shooting him with a deadly weapon in Scott Co. on March 13, 2001</u>. . . .

> 16.  I know that the Court will not permit anyone to plead GUILTY who is innocent, and with that in mind, and because I AM GUILTY, I wish to plead GUILTY and respectfully request the Court to accept my PLEA OF GUILTY.

(Underlining in original with hand-written entries.)  That same day, [Petitioner] appeared in court for his plea hearing. [Petitioner] stated that he was able to understand the petition, and he was aware of the ranges of punishment for the crimes of first-degree assault and ACA.  He also acknowledged that, by pleading guilty, he would be giving up his rights to have a trial, confront the witnesses against him and present evidence on his own behalf.  The following colloquy then took place:

[THE COURT] Listen to the facts the prosecutor says they

---

[3] In its footnote two, the Missouri Court of Appeals stated:  "All references to statutes are to RSMo (2000)."  (Opinion, dated Oct. 31, 2007, Resp'ts Ex. E, at 2.)

would prove if we had a trial, and if they are different than the facts that you remember, let me know.

[Prosecutor]: Judge, the evidence would be on the evening of March 13, 2001, [Petitioner] entered the Security Locksmith located at 133 West Malone Street in Sikeston, Missouri. When he entered that [place], he was armed with a deadly weapon, being a hand gun. He approached the owner of the locksmith store, [Victim], and demanded money from [Victim] with a pistol in his hand. At one point [Petitioner put] the pistol on the counter top while [Victim] was collecting money.

[Petitioner] began counting the money on the floor with the pistol out of his hand. [Victim] made an attempt to acquire the pistol from [Petitioner] and a struggle ensued between [Petitioner] and [Victim]. At one time [Petitioner] discharged the gun into [Victim]'s upper chest shoulder area. At which point [Petitioner] stood above [Victim] and attempted to shoot [Victim] three additional times with the pistol. However, the pistol jammed and did not fire those three additional times. At that point [Petitioner] grabbed [Victim] by the . . . head and hair and dragged him to a locked safe . . . and demanded more money from [Victim]. As [Victim] was bleeding, he explained that he could not see because his glasses had been knocked off, and [Petitioner] began striking [Victim] in the head with the pistol. The safe was opened and more money gained and [Petitioner] left with the amount of money he had gained from [Victim], left 133 West Malone heading towards his apartment building where he was living.

[Victim] in desperation dialed 911 and was in a semiconscious state when the ambulance arrived and took him to the Missouri Delta Hospital. At Missouri Delta Hospital [Victim] was operated on by Dr. Helfrich. At which point he flat lined approximately three times on the operating table and eventually recovered from the gun shot wound and regained consciousness several days later. Upon regaining consciousness he did speak to Detective Keith Lawson and identified [Petitioner] as the one who

had robbed and assaulted him.

The night of the assault though, Detective Mike Williams responded to the Missouri Delta Medical Center to check on the status of [V]ictim . . ., and ma[d]e contact with [Petitioner] at Missouri Delta Hospital. [Petitioner] did have his hand wrapped in a bandage, and it was believed he actually shot himself in the process of shooting [Victim].

At the locksmith store there were numerous amounts of money and blood soaked money leading towards [Petitioner's] apartment building.

Detective Armour from the Department of Public Safety suspected [Petitioner] and made contact with Mrs. Mosby and consent to search the residence was given, and in the bathroom area several bloody towels were located in the bathroom and information was gained that [Petitioner] may have [gone] to another residence located on Ruth Street. Contact was made at that residence and additional blood was found at that residence and statements were obtained from Miss Johnson that [Petitioner] indicated he had shot himself and was bleeding.

Eventually Deputy Bobby Sullivan stopped a vehicle on Ruth Street where [Petitioner] was a passenger, and in the search of the vehicle found blood soaked money from the crime scene.  The gun shot residue test was positive for [Petitioner] handling a firearm. [Petitioner] was taken into custody and after being read his Miranda Rights, gave a statement stating that he did participate and was the person who robbed [Victim] and was the person [who] shot [Victim].  Later that morning on March 14, [Petitioner] gave a more detailed statement of the robbery and the assault and how it took place.  Therefore, the State would be able to [pr]ove that [Petitioner] attempted to kill or cause serious physical injury to [Victim] by shooting him and in the course thereof, inflicted serious physical injury to [Victim].  This assault took place in Sikeston, Scott County, Missouri.

In regard to Count III, [Petitioner] did commit the felony of assault in the first degree with the use, assistance and aid of a deadly weapon, with the pistol that was used to discharge the bullet that struck [Victim].

THE COURT: [Petitioner], is that basically what happened in this case?

[PETITIONER]: No, sir.

THE COURT: What happened?

[PETITIONER]: How the gun went off and a lot more stuff.

THE COURT: All right, you are saying that you didn't commit the assault in the first degree by attempting to kill or cause serious physical injury to [Victim] by shooting him and in the course thereof inflicted serious physical injury on [Victim]; you are saying that didn't happen?

[PETITIONER]: Yes.

THE COURT: It did or did not?

[PETITIONER]: It did not.

[PETITIONER'S COUNSEL]: It didn't happen like that.

[PETITIONER]: I didn't shoot him.

THE COURT: I don't think you can plead to assault first if you didn't do it.

[PETITIONER]: I just don't want to go to trial and lose it, so the best thing, I talked to my lawyer is –

[PETITIONER]'s MOTHER: He's in a no-win situation. They say if he do[es]n't plead guilty today –

THE COURT: Off the record.

After a brief discussion off the record, the following additional colloquy took place:

[PETITIONER]: I will take the plea, your Honor.

THE COURT: I have to find a factual basis for that or I have to make a finding under an Alford plea.

[PROSECUTOR]: Absolutely not, Judge. If he's claiming self-defense in this case, the State will not accept this plea and give him the benefit of dismissing robbery first. The State is ready for jury trial. [V]ictim is ready to testify.

THE COURT: If you tell me that you did not attempt to kill or cause serious physical injury to [Victim] by shooting him and in the course thereof inflicted serious physical injury to [Victim], I cannot accept a plea under Count I to the class A felony of assault in the first degree if it was an accidental shot or what you claim it to be. That is not what they have charged.

[PETITIONER]'S MOTHER: I think what he's saying, they w[ere] wrestling with the gun, but the gun went off when he pulled the gun.

THE COURT: He pulled the gun?

THE MOTHER: When they w[ere] wrestling for the gun. [Victim] really shot himself. That's how he shot his finger too.

THE COURT: Who is holding the gun?

[PROSECUTOR]: [Petitioner] was holding the gun. The State asks to set this for trial. Could we set this the last day of April?

[PETITIONER]: Sir, is the plea off?

THE COURT: You can't make a factual basis for me to accept the plea. If you didn't shoot him, you didn't shoot

- 8 -

him.

THE MOTHER: You asked him a question.  He was giving you an answer.

[PETITIONER]: Gun accidentally went off.

THE COURT: That's a defense to the charge.

[PETITIONER]'S MOTHER: He's in a no-win situation.  If he has a trial, he will get more time.

THE COURT: He can plea.

THE MOTHER: Yes, I try to shoot him, tried hard, tried hard.[4]

[PROSECUTOR]: Judge, I think this is an insult to [Victim].  He is a business owner in Scott County and to say when [Petitioner] pulls a gun in his case in an effort to defend himself is responsible for shooting himself.

[PETITIONER]'S MOTHER: He said he did that.  He was just answering his question.  I apologize if I upset you in

---

[4]  In its footnote 3, the Missouri Court of Appeals stated:

   In [Petitioner]'s brief, he argues that his mother did make this statement, but she mistakenly used the pronoun "I" to describe who tried to do the shooting. The motion court made a specific finding that [Petitioner] made the statement and that it was misattributed to the mother by the court reporter.  After reviewing the entire record, the court's finding does not appear to be clearly erroneous.  In any event, the controversy about the accuracy of the transcript is immaterial because [Victim] appeared at the sentencing hearing.  His testimony is described in more detail infra.  Insofar as relevant here, [Victim] testified that, after he was shot, he was on his hands and knees bleeding from a chest wound. While he was in that incapacitated state, [Petitioner] pointed the pistol directly at [Victim] and pulled the trigger several more times, but the gun had jammed and did not fire.

(Opinion, dated Oct. 31, 2007, Resp'ts Ex. E, at 6 (alterations added).)

any kind of way.  I apologize to the Court.  Thank you.

THE COURT: So, in Count I to the Class A felony of assault in the first degree committed on or about March 13, 2001, by attempting to kill or cause serious physical injury to [Victim] by shooting him and in the course thereof, inflicting serious injury to [Victim], are you guilty or not guilty?

[PETITIONER]: Guilty.

THE COURT: In Count III to the unclassified felony of armed criminal action committed on or about March 13, 2001, in Scott County, State of Missouri, [Petitioner] committed the felony of assault in the first degree as charged in Count I, all allegations of which are incorporated herein by reference, and [Petitioner] committed the foregoing felony of assault in the first degree by, with and through the use, assistance and aid of a deadly weapon. Are you guilty or not guilty of that?

[PETITIONER]: Guilty.

After hearing all of the above, the plea court determined that:  (1) there was a factual basis to support [Petitioner]'s pleas of guilty to the charges of first-degree assault and ACA; (2) [Petitioner] was, in fact, guilty of those offenses; and (3) his pleas of guilty were made voluntarily with an understanding of the nature of the charges against him, the ranges of punishment and the consequences of his pleas.

On July 9, 2002, the court held a sentencing hearing.  [Victim] was called as a witness and gave the following testimony.  On March 13, 2001, [Petitioner] entered the store late in the evening armed with a handgun.  He pointed the gun at [Victim] and demanded money.  [Victim] opened the cash register and stepped back.  [Petitioner] came behind the counter and began removing the money.  When he laid the gun on the floor so he could put the money in his pockets, [Victim] reached for it. [Petitioner] knocked [Victim] up against a door jamb, and he lost consciousness.  When he awoke, he was on his hands and knees bleeding from a gunshot wound to his chest.  [Petitioner] pointed the gun at [Victim] and tried to shoot him again by pulling the trigger several times,

- 10 -

but the weapon did not fire.  [Petitioner] then dragged [Victim] to a nearby safe and told him to open it.  When [Victim] said there was no money in it, he was hit on the head with the gun.  He opened the safe, and [Petitioner] then left the store.  [Victim's] injury was so serious that his heart stopped beating twice, and he would have died without resuscitation by physicians.

After presentation of evidence, the prosecutor discussed the State's sentencing requests.  The following colloquy then occurred:

> [PROSECUTOR]: The State would ask that [Petitioner] be sentenced to life in prison on Count I and Count III, and the community demands that the sentences run consecutive . . .

> THE COURT: Isn't ACA consecutive to any other sentence anyway?  Don't you have to serve ACA first?

> [PROSECUTOR]: I am not sure, Judge.  I am just asking that it be consecutive on the record.

The court decided to sentence [Petitioner] to life imprisonment on Count I and ten years on Count III because, "being in DYS for ten and a half years and then shooting someone else, and this is the second person you shot, I couldn't consider anything less than that."  Thereafter, the court stated that "[i]t is my understanding that ACA is served consecutive with the other sentence.  I understand you have to serve ACA first.  If not, then the order will read he will serve consecutively, but it is my understanding you have to do that first any way."  The judgment stated that [Petitioner]'s sentences for first-degree assault and ACA were to be served consecutively to each other and to another sentence that [Petitioner] was already serving.

Thereafter, [Petitioner] filed a timely pro se motion for post-conviction relief pursuant to Rule 24.035.  Appointed counsel filed an amended motion challenging the factual basis for [Petitioner]'s plea of guilty to first-degree assault and the sentencing court's decision to run the term of imprisonment for ACA consecutively to the other sentences.  The motion court denied relief without an evidentiary hearing.  With respect to the first allegation, the motion court determined that it was refuted by the record because the necessary intent to kill or cause serious physical

- 11 -

injury could be inferred from [Petitioner]'s actions in actually shooting [Victim] once and then unsuccessfully attempting to shoot him several more times. With respect to the second allegation, the court determined that the sentencing judge intended to impose consecutive sentences whether or not that was required for an ACA conviction. This appeal followed.

(Opinion, dated Oct. 31, 2007, Resp'ts Ex. E, at 2-9 (all alterations added except the eleventh, twelfth, seventy-sixth, eighty-fourth, eighty-ninth, one hundred-sixteenth, one hundred-eighteenth, and one hundred-twentieth alterations)).)

With respect to Petitioner's first point, that there was an insufficient factual basis for the guilty plea to first-degree assault, the state appellate court stated in relevant part:

Rule 24.02(e) provides that a trial court "shall not enter a judgment upon a plea of guilty unless it determines that there is a factual basis for the plea." This rule is not constitutionally based. Myers v. State, 223 S.W.3d 165, 167 (Mo. [Ct.] App. 2006). Instead, "its purpose is to aid in the constitutionally required determination that a defendant enter his or her plea of guilty intelligently and voluntarily." Price v. State, 137 S.W.3d 538, 541 (Mo. [Ct.] App. 2004); see Sales v. State, 700 S.W.2d 131, 132-33 (Mo. [Ct.] App. 1985). The factual basis for a guilty plea can be established from anything that appears clearly on the record at any time before judgment is entered, including facts adduced at the sentencing hearing. Price, 137 S.W.3d at 542.

As noted above, [Petitioner] pled guilty to first-degree assault. See § 565.050. A person commits this crime "if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." § 565.050.1. If the actor inflicts serious physical injury on the victim in the course of the assault, this crime is a class A felony. § 565.050.2. To prove this offense, there must be evidence of a specific intent on the part of the actor to cause serious physical injury. State v. Chambers, 998 S.W.2d 85, 90 (Mo. [Ct.] App. 1999). Nevertheless, "[i]ntent is generally not susceptible of direct evidentiary proof and may be based upon circumstantial evidence or inferred from surrounding facts." State v. Johnson, 948 S.W.2d 161, 166 (Mo. [Ct.] App. 1997). Thus, a defendant's mental state may be inferred from his conduct before,

during and after the act.  State ex rel. Verweire v. Moore, 211 S.W.3d 89, 92 (Mo. banc 2006); State v. Immekus, 28 S.W.3d 421, 426 (Mo. [Ct.] App. 2000).  Additionally, the requisite mental state necessary to support a conviction under § 565.050 can be inferred from the use of deadly weapons or dangerous instruments on vital areas of a victim's body or conduct that would tend to cause death or serious physical injury.  See State v. Booyer, 87 S.W.3d 926, 930-31 (Mo. [Ct.] App. 2002); State v. Moore, 1 S.W.3d 586, 589 (Mo. [Ct.] App. 1999).

Before judgment was entered, the plea court was aware of the following facts.  When [Petitioner] entered the store, he was armed with a deadly weapon.  According to [Victim's] testimony at the sentencing hearing, he was knocked against a door jam and rendered unconscious when he reached for [Petitioner]'s gun.  When [Victim] awoke, he was bleeding from a wound in his chest.  From this testimony, the plea court could reasonably infer that [Victim] had been shot while he was unconscious.  The reasonableness of this inference is amply supported by [Victim's] further testimony that, while he was on his hands and knees on the floor in an incapacitated state, [Petitioner] pointed the gun at [Victim] and pulled the trigger several more times. [Victim] was spared death or further serious physical injury only because the gun had jammed.  He sustained further injury when he was pistol-whipped about the head by [Petitioner] in an attempt to obtain more money.  Based upon the foregoing facts and reasonable inferences, the plea court determined that there was a factual basis for [Petitioner]'s plea.

The motion court reached the same conclusion.  We do not find that conclusion to be clearly erroneous.  Based upon [Petitioner]'s actions before, during and after the shooting of [Victim], the facts and reasonable inferences were sufficient to establish that [Petitioner] had a specific intent to cause serious physical injury to [Victim] and, in the course thereof, did inflict such injury on him.  Therefore, these facts and inferences provided a factual basis for [Petitioner]'s plea of guilty to first-degree assault in violation of § 565.050.  See State v. Scott, 769 S.W.2d 149, 151 (Mo. [Ct.] App. 1989) (defendant's act of pointing a gun at a group of people and shooting the victim was sufficient to prove the intent necessary to support a conviction pursuant to § 565.050); State v. Unverzagt, 721 S.W.2d 786, 788 (Mo. [Ct.] App. 1986) (defendant's act of pointing what he believed to be a loaded revolver at another person four feet away and pulling the trigger two or three times was sufficient to prove the intent necessary to support a conviction pursuant to § 565.050);

State v. Young, 570 S.W.2d 324, 326 (Mo. [Ct.] App. 1978) (defendant's act of striking victim three times in the head with a pistol was sufficient to prove an intent to cause death or great bodily harm).

England v. State, 85 S.W.3d 103 (Mo. [Ct.] App. 2002), is the primary case cited by [Petitioner] to support his argument that there was no factual basis for his plea, but that case is factually distinguishable. There, the defendant was charged only with attempting to kill the victim in violation of § 565.050.  To prove that charge, the State had to present evidence of "the defendant's specific intent to cause the victim's death." Id. at 107.  When the defendant pled guilty to the first-degree assault charge, he testified that he shot randomly at the house without knowing for certain whether anyone was inside. Id. at 109.  The victim was grazed in the head by one of the bullets.  Id. at 105.  The western district of this Court concluded that defendant's admissions at the plea hearing only showed reckless behavior and did not establish that he acted with the specific intent to cause the victim's death.  Id. at 109.  In the case at bar, the facts before the plea court were markedly different. [Petitioner] shot and seriously injured an unconscious [Victim].  While [Victim] was incapacitated on the floor, [Petitioner] pointed the pistol at [Victim], and attempted to shoot him several more times.  Thereafter, [Petitioner] pistol-whipped [Victim], which was another act that could cause death or serious physical injury.  This uninterrupted course of events demonstrates without dispute that [Petitioner] attempted to kill a known victim and inflicted serious physical injury on that person during the course of the assault. Therefore, England is inapposite.

[Petitioner] also points to his equivocation during the plea hearing as proof that he lacked the requisite intent to be guilty of first-degree assault, but we find that assertion unpersuasive.  A similar argument was raised in Pippenger v. State, 794 S.W.2d 717 (Mo. [Ct.] App. 1990). There the movant first denied that he "willfully" failed to appear while on bond in a rape case.  Id. at 719-20.  The trial court carefully and repeatedly went over the elements of the offense charged, particularly the requirement that the State had to prove that he willfully failed to appear. "[T]he nature of the charge, especially the element of willfulness, was carefully explained to movant.  He thereupon admitted his guilt.  A factual basis for the guilty plea was clearly established."  Id. at 721.  This Court held that the defendant's initial equivocation did not render his plea involuntary:

> For a guilty plea to be valid, it is not necessary that the movant admit to, or even believe, the veracity of the elements of the charges against him; all that is required is that the plea be knowing and voluntary. "A guilty plea is not involuntary, even though the accused maintains his innocence, so long as the plea represents a voluntary choice of alternatives available to him at the time, according to his own best interests.

Id. (citations omitted); see Trehan v. State, 872 S.W.2d 156, 160 (Mo. [Ct.] App. 1994) (movant understood he was pleading guilty to receiving stolen property, even though he initially denied that he knew property was stolen).

> The motion court concluded that [Petitioner] knowingly and voluntarily pled guilty to first-degree assault. The court's conclusion is not clearly erroneous. After reviewing the entire record, it is evident that [Petitioner] was very desirous of entering a plea of guilty to avoid the risks of trial. The plea court carefully explained to [Petitioner] that his guilty plea could not be accepted if he did not intentionally shoot [Victim]. The colloquy among the plea court, the attorneys and [Petitioner] demonstrates that he fully understood the nature of the charge against him before entering his guilty plea, which represented "a voluntary choice of alternatives available to him at the time, according to his own best interests." Turner v. State, 755 S.W.2d 409, 410 (Mo. [Ct.] App. 1988); Pippenger, 794 S.W.2d at 721. Point I is denied.

(Opinion, dated Oct. 31, 2007, Resp'ts Ex. E, at 10-14 (all alterations added except the sixth and the forty-second alterations).)

With respect to Petitioner's second point on appeal, challenging the consecutive sentences, the state appellate court stated:

> The second point on appeal concerns the plea court's decision to require that [Petitioner]'s ACA sentence be served consecutively. As a general proposition, a trial court has the discretionary authority to determine whether multiple sentences of imprisonment are to be served consecutively or concurrently. Hight v. State, 841 S.W.2d 278, 283 (Mo. [Ct.] App. 1992); Johnson v. State, 607 S.W.2d 808, 809 (Mo. [Ct.] App.

- 15 -

1980); § 558.026.1.  In pertinent part, § 571.015.1 states that "[t]he punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon." Id. ([emphasis] added).  In State v. Treadway, 558 S.W.2d 646, 653 (Mo. banc 1977), [overruled on other grounds, Sours v. State, 593 S.W.2d 208, 210 (Mo. banc), vacated by Missouri v. Sours, 446 U.S. 962, and reinstated as supplemented by Sours v. State, 603 S.W.2d 592 (Mo. banc 1980),] our Supreme Court held that the phrase, "in addition to," did not require that a sentence imposed pursuant to § 571.015.1 run consecutively to the sentence for the underlying felony.  In that case, the trial court had erroneously believed it was required to impose a consecutive sentence for an ACA conviction.  Id. at 652.  Therefore, the case was remanded for resentencing so the trial court could exercise its judicial discretion in deciding whether the two sentences should be served concurrently or consecutively.  Id. at 653.  In several subsequent cases, resentencing has been ordered when the trial court acted under the mistaken belief that consecutive sentencing was mandated by § 571.015.1.  See, e.g., State v. Freeman, 212 S.W.3d 173, 177 (Mo. [Ct.] App. 2007); Roller v. State, 84 S.W.3d 525, 528 (Mo. [Ct.] App. 2002); State v. Taylor, 67 S.W.3d 713, 716 (Mo. [Ct.] App. 2002); State v. Olney, 954 S.W.2d 698, 701 (Mo. [Ct.] App. 1997).

In the case at bar, [Petitioner] contends the motion court clearly erred in denying relief because the plea court mistakenly believed that it did not have discretion to run the sentences for first-degree assault and ACA concurrently.  After reviewing the transcript, however, the motion court concluded that [Petitioner]'s consecutive sentence for his ACA conviction did not result from any mistaken belief by the plea court:

> It is apparent to this court, that the [plea] court was going to sentence [Petitioner] to consecutive time regardless of what his understanding was regarding how sentences on [ACA] apply to a defendant.  The [plea] court referred to [Petitioner's] actions in this case being his second shooting. The [plea] court was merely trying to lessen the emotional impact of his decision by referring to another reason for consecutive time before giving consecutive time to [Petitioner] for his criminal act.

In our view, this conclusion is not clearly erroneous because it is

- 16 -

supported by the following facts.  First, the prosecutor initially asked for consecutive sentences based upon "community demands" for that outcome, rather than any misinterpretation of the law.  Second, the plea court's question to the prosecutor on this subject indicates the judge did not know whether a consecutive sentence was required.  Third, the prosecutor did not misstate the law on the issue in his response.  Instead, he made it clear that he was asking on the record for consecutive sentences, regardless of whether or not such a result was mandatory.  Fourth, the plea court knew [Petitioner] was already serving another sentence for shooting someone other than [Victim] and decided, in the exercise of its discretion, to make the first-degree assault and ACA sentences run consecutively to the pre-existing sentence.  That decision cannot be attributed to any misunderstanding of the law by the plea court.  Finally, the plea court made it plain that it intended to impose consecutive sentences, regardless of whether or not that outcome was compelled by law, when the judge made this statement during sentencing:

> It is my understanding that ACA is served consecutive [to] the other sentence.  I understand you have to serve ACA first.  <u>If not, then the order will read he will serve consecutively,</u> but it is my understanding you have to do that first any way.

([emphasis] added.)  Point II is denied.

(Opinion, dated Oct. 31, 2007, Resp'ts Ex. E, at 14-17 (all alterations added except fourth alteration) (footnote omitted).)

The Missouri Court of Appeals issued its mandate on November 16, 2007.  (<u>See</u> Docket sheet for **Mosby v. Missouri**, No. SD 27141, https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited Sept. 21, 2011).)

Petitioner then filed this timely federal habeas action.  In his petition (Doc. 1), Petitioner presents three grounds for relief.  First, Petitioner argues that his plea was not voluntary, knowing, and intelligent because the plea court did not comply with Missouri

Supreme Court Rule 24.02 in that there was an insufficient factual basis to support the first-degree assault charge; specifically, there were insufficient facts showing that Petitioner "attempted to kill or cause serious physical injury" to Victim. (Id. [Doc. 1 at 16].)  For his second ground for relief, Petitioner alleges that his guilty plea was not voluntary, knowing, and intelligent, and his right to due process was violated, because the sentencing court mistakenly believed it was required to run the ACA sentence consecutive to the sentence imposed for the first-degree assault conviction.  (Id. [Doc. 1 at 24].)  For his third ground, Petitioner challenges the State's attribution to him of a statement made during the plea proceeding that was reported as stated by his mother. (Id. [Doc. 1 at 26].)  Respondents counter that grounds one and two are not cognizable in a federal habeas proceeding such as this one and that all three grounds like merit.

### Discussion

Standard of Review.  Title 28 U.S.C. § 2254(d) mandates that a federal court grant habeas relief on a claim that was adjudicated on its merits by the State courts *only* "when the state court's decision [is] contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court [of the United States], or the [state court] decision [is ]based on an unreasonable determination of the facts in light of the evidence presented in the state court." **de la Garza v. Fabian**, 574 F.3d 998, 1001 (8th Cir. 2009), cert. denied, 130 S. Ct. 2412 (2010); accord **Christenson v. Ault**, 598 F.3d 990, 994 (8th Cir. 2010).  "A state court decision is

contrary to clearly established federal law if it reaches a conclusion opposite to one reached by the [United States] Supreme Court on a question of law or decides the case differently than the [United States] Supreme Court has decided a case with a materially indistinguishable set of facts." **de la Garza**, 574 F.3d at 1001; accord **Losh v. Fabian**, 592 F.3d 820, 823 (8th Cir. 2010). "A state court decision involves an unreasonable application of clearly established federal law if, in the federal court's independent judgment, the relevant state court decision not only applied clearly established federal law incorrectly, but also did so unreasonably." **de la Garza**, 574 F.3d at 1001. "The unreasonable application inquiry is an objective one." **Id.**; see **Losh**, 592 F.3d at 823 (under the unreasonable application clause of § 2254, a habeas petition may be granted "only if the state court applied the correct governing legal principle in an objectively unreasonable manner").

Importantly, "[o]nly rulings in Supreme Court decisions issued before the state court acts are considered clearly established federal law, for a state court does not act contrary to or unreasonably apply clearly established federal law if there is no controlling Supreme Court holding on the point." **Losh**, 592 F.3d at 823 (citations omitted). The state court does not need to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" **Revels v. Sanders**, 519 F.3d 734, 739 (8th Cir. 2008)) (quoting Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)).

- 19 -

"[T]he 'summary nature' of the [state court's] discussion of [a] federal constitutional question does not preclude application of [§ 2254's] standard." **Brown v. Luebbers**, 371 F.3d 458, 462 (8th Cir. 2004) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law precedential principles to the contrary." **Harrington v. Richter**, 131 S. Ct. 770, 784-85 (2011). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" **Id.** at 785.

Additionally, in a federal habeas action pursued by a state prisoner, "a determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The deference owed by a federal habeas court to a state court's findings of fact includes deference to state court credibility determinations. **Smulls v. Roper**, 535 F.3d 853, 864 (8th Cir. 2008) (en banc). Moreover, the presumption of correctness of findings of fact applies to the factual determinations made by both the lower and appellate state courts. **Id.**

"Solemn declarations in open court carry a strong presumption of verity." **Blackledge v. Allison**, 431 U.S. 63, 74 (1977). Therefore, "while a guilty plea taken in open court is subject to collateral attack, 'the defendant's representations during the plea-taking carry a strong presumption of verity and pose a "formidable barrier in any

- 20 -

subsequent collateral proceedings."'" **Bramlett v. Lockhart**, 876 F.2d 644, 648 (8th

Cir. 1989) (quoting Voytik v. United States, 778 F.2d 1306, 1308 (8th Cir. 1985)).

  Ground One - Sufficiency of Factual Basis for Guilty Plea to First-Degree

Assault. For his first ground for relief, Petitioner argues that his plea was not voluntary,

knowing, and intelligent because the plea court did not comply with Missouri Supreme

Court Rule 24.02 in that there was an insufficient factual basis to support the first-degree

assault charge; specifically, there were insufficient facts showing that Petitioner

"attempted to kill or cause serious physical injury" to Victim. (Pet. [Doc. 1 at 16].)

Petitioner argues that the first-degree assault offense is based on the shooting of Victim

that resulted in injury, which shooting occurred during a struggle for the gun, rather than

on the subsequent attempted shooting of Victim, which did not result in injury to Victim.

(Id. at 17.)

  Respondents counter that the requirement that a guilty plea have a factual basis

is not a constitutional requirement unless it is accompanied by a claim of innocence,

citing **Wabasha v. Solem**, 694 F.2d 155, 157 (8th Cir. 1982) (citing North Carolina v.

Alford, 400 U.S. 25, 38 n.10 (1970)), and here Petitioner did not assert his innocence

through entry of an Alford plea but instead pleaded guilty to the first-degree assault

charge. Because Petitioner has not proclaimed his innocence, Respondents urge, this

ground for relief presents a claim that is not cognizable in a federal habeas proceeding.

Additionally, Respondents argue that the ground lacks merit because the state appellate

court's decision addressed only the elements of the offense under state law and did not

discuss, contradict, or unreasonably apply any clearly established Supreme Court law.

When "conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." **Estelle v. McGuire**, 502 U.S. 62, 68 (1991); accord **Middleton v. Roper**, 455 F.3d 838, 852 (8th Cir. 2006). The Constitution requires that a guilty plea be knowing and voluntary. See, e.g., **United States v. Broce**, 488 U.S. 563, 569-70 (1989); **Alford**, 400 U.S. at 31; **Boykin v. Alabama**, 395 U.S. 238, 242 (1969); **Ivy v. Caspari**, 173 F.3d 1136, 1141 (8th Cir. 1999). A guilty plea is not voluntary if the defendant does not understand the nature of the constitutional protections he is waiving or if the defendant has such an incomplete understanding of the charges that his plea cannot stand as an intelligent admission of guilt of the charged offense. **Ivy**, 173 F.3d at 1141-42. There is no federal constitutional requirement that a state defendant's guilty plea have a factual basis, unless the defendant pleading guilty claims he is innocent of the relevant charge.[5] **Wabasha**, 694 F.2d at 157 (absent a claim of innocence, the requirement that a guilty plea have a factual basis arises out of a procedural rule and not out of the United States Constitution) (citing Alford, 400 U.S. at 38 n.10); cf. **Cranford v. Lockhart**, 975 F.2d 1347, 1349

---

[5]  Claims that guilty pleas in state court lacked a factual basis have, however, been addressed on the merits in federal habeas cases even when the petitioner did not claim innocence. See, e.g., **Moore v. Armontrout**, 928 F.2d 288, 292-93 (8th Cir. 1991) (addressing the merits of an argument that a "guilty plea to [a] tampering charge [was] unconstitutional because of an inadequate factual basis"); **Travis v. Lockhart**, 787 F.2d 409, 410 (8th Cir. 1986) (per curiam) (addressing the merits of a factual basis of a guilty plea claim as presenting an issue about the knowing and voluntary nature of the plea).

(8th Cir. 1992) (per curiam) (rejecting, on the merits, a claim that no factual basis existed for a guilty plea entered by a petitioner who denied his guilt).

Here, the record of the plea proceeding indicates that Petitioner pleaded guilty to first-degree assault after asserting his position that the gun discharged during his and Victim's struggle for the gun.  The state appellate court concluded a different scenario resulted in the shooting of Victim.  Assuming, without deciding, that Petitioner's assertions make the factual basis of his guilty plea to first-degree assault a proper ground for federal habeas relief under **Wabasha**, the Court will consider the merits of Petitioner's first ground for relief.[6]

In addressing whether there was a factual basis for the intent element of the first-degree assault offense, the Missouri Court of Appeals carefully considered the available record in light of relevant state law and decided that Petitioner's intent to cause serious physical harm to Victim was established through Victim's statements at sentencing indicating that, by inference, Petitioner shot Victim when Victim was unconscious, and then, after wounding Victim as a result of that shooting, attempted to shoot Victim several more times and  pistol-whipped Victim"about the head."  The issue of whether or not there was a factual basis for the intent element does not present an issue regarding

---

[6] To the extent this ground for relief is an effort by Petitioner to seek this Court's review of the state appellate court's determination that the state plea court complied with Mo. S. Ct. R. 24.02(e), such a claim is not cognizable in a federal habeas proceeding.  See **Lee v. Norris**, 354 F.3d 846, 847 (8th Cir. 2004) ("[A] mere violation of state law . . . is not cognizable in federal habeas"); **McDonald v. Bowersox**, 101 F.3d 588, 592 (8th Cir. 1996) ("'[a] federal [habeas] court may not re-examine a state court's interpretation and application of state law'") (quoting Schleeper v. Groose, 36 F.3d 735, 737 (8th Cir. 1994)).

any clearly established Supreme Court precedent but is purely a state law issue under the circumstances of this case.  "Determinations of state law by the Missouri Court of Appeals are binding" in a federal habeas proceeding.  **Crump v. Caspari**, 116 F.3d 326, 327 (8th Cir. 1997); <u>see</u> <u>also</u> **Estelle**, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); **Taylor v. Bowersox**, 329 F.3d 963, 968 (8th Cir. 2003) ("A state's interpretation of its own law is virtually unreviewable by a federal court").

The state appellate court did not implicate, contravene, or unreasonably apply any clearly established federal law in reaching its decision that the guilty plea on the first-degree assault charge had sufficient factual support and in affirming the state motion court's denial of Petitioner's motion for post-conviction relief on this ground. Furthermore, these state court decisions are based on a reasonable determination of the facts in light of the evidence presented.

Petitioner's first ground for relief is denied.

<u>Ground Two: Sentencing Court's Mistaken Belief that ACA Sentence had to Run Consecutively to Another Sentence.</u>  For his second ground for relief, Petitioner alleges that his guilty plea was not voluntary, knowing, and intelligent, and his right to due process was violated, because the sentencing court mistakenly believed it was required to run the ACA sentence consecutive to the sentence imposed for the first-degree assault conviction.  (Pet. [Doc. 1 at 24].)  Respondents counter that this is a matter of state law

that is not cognizable in a federal habeas proceeding, and, if cognizable, lacks merit, citing **Keeny v. Swenson**, 458 F.2d 680 (8th Cir. 1972) (per curiam).

Absent circumstances that are not present here, "[t]he federal courts have no right to review any sentence of a state court which does not exceed the statutory maximum sentence which may be imposed under the laws of the state." **Id.** at 683 (internal quotation marks omitted) (quoting Stevens v. Warden, Md. Penitentiary, 382 F.2d 429, 433 (4th Cir. 1967)). Missouri law allows the imposition of a sentence for ACA "in addition to" another sentence. Mo. Rev. Stat. § 571.015. Petitioner does not contend that either alone or together the sentences imposed on his offenses exceed the applicable maximum sentence allowed by state law.

Rather, Petitioner urges he is entitled to federal habeas relief because the sentencing court imposed consecutive sentences due to a mistaken belief that consecutive sentences were required. The Eighth Circuit has found a federal habeas claim arising out of a sentence imposed by a state judge who was under an "erroneous impression" about the conviction either was not cognizable or was harmless error. See **Keeny**, 458 F.2d at 683. Petitioner has not provided any basis for concluding **Keeny** is inapplicable here.

Whether viewed as not cognizable or as lacking merit, Petitioner's second ground for relief is denied. The state appellate court did not implicate, contravene, or unreasonably apply any clearly established federal law in reaching its decision that the

- 25 -

sentencing court properly imposed consecutive sentences here and in affirming the state motion court's denial of Petitioner's motion for post-conviction relief on this ground. Furthermore, these state court decisions are based on a reasonable determination of the facts in light of the evidence presented.

Ground Three: State Courts Improperly Attributed to Petitioner a Statement Reported in the Transcript as Being Made by Petitioner's Mother.  For his third and final ground for federal habeas relief, Petitioner challenges the State's attribution to him of a statement made during the plea proceeding that was reported in the transcript as being stated by his mother. (Pet. [Doc. 1 at 26].) Respondents contend that Petitioner has not rebutted the presumption of correctness accorded to these state court findings and has not demonstrated that the state courts' adjudication of this claim was based on an unreasonable determination of the facts in light of the evidence presented.  Respondents further point out the state appellate court concluded it was immaterial whether Petitioner made the relevant statement or not, due to other factual support for the guilty plea.

The challenged statement is: "Yes, I try to shoot him, tried hard, tried hard."  Due to the pronoun "I" in that statement, the State court reasonably attributed the statement to Petitioner.  The record does not clearly and convincingly rebut the state court's attribution of the statement to Petitioner and does not convince this Court that it should not accord deference to the state court's conclusion.  Moreover, even in the absence of this statement by Petitioner, the record contains sufficient factual support for Petitioner's guilty plea.

- 26 -

Petitioner's third ground for relief is denied. The state appellate court did not implicate, contravene, or unreasonably apply any clearly established federal law in reaching its decision that the relevant statement should be attributed to Petitioner and its decision is based on a reasonable determination of the facts in light of the evidence presented.

## Conclusion

The state appellate court's affirmance of the post-conviction motion court's denial of relief on the three claims Petitioner now presents for federal habeas relief is not contrary to, or an unreasonable application, of clearly established federal law; and is not based on an unreasonable determination of the facts. Petitioner's guilty plea was not involuntary or unknowing as claimed by Petitioner.

Accordingly,

**IT IS HEREBY ORDERED** that Terry Russell is **SUBSTITUTED** for Steve Larkins as a Respondent in this proceeding

**IT IS FURTHER ORDERED** that Chris Koster is **ADDED** as a Respondent in this proceeding.

**IT IS FINALLY ORDERED** that the 28 U.S.C. § 2254 petition of Louis Z. Mosby [Doc. 1] be **DENIED** without further proceedings.

An appropriate Judgment shall accompany this Memorandum and Order.

- 27 -

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of September, 2011.